UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| CECIL EUGENE SHAW,<br><br>Plaintiff,<br><br>v.<br><br>RANDY KELLEY, et al.,<br><br>Defendants. | Case No.16-cv-03768-VKD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 59 |

Plaintiff Cecil Eugene Shaw sues for alleged violations of Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq*. and the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51-53. He claims that, due to architectural barriers at the Burger Pit ("Restaurant") in San Jose, California, he was denied full and equal access to the facilities during his one visit there on August 21, 2014.

Mr. Shaw now moves for summary judgment on all claims for relief. Defendants oppose the motion.[1] The Court ordered supplemental briefing on the matter. Defendants timely filed their supplemental brief. For reasons that remain unexplained, Mr. Shaw did not. The Court does not approve of Mr. Shaw's untimely submission and warns him against future noncompliance with court-ordered deadlines. Nevertheless, the Court has considered all of the moving and responding papers, as well as the oral arguments presented. For the reasons discussed below, the Court grants

---

[1] Defendants' opposition was untimely. Nevertheless, given the potentially dispositive nature of summary judgment proceedings, and despite the Court's skepticism as to defendants' proffered reason for their delay, the Court accepted the belated filing. Dkt. No. 69.

Mr. Shaw's motion for summary judgment in part and denies it in part.[2]

## I.   BACKGROUND

Unless otherwise indicated, the following facts are undisputed.

Mr. Shaw says that he suffers from debilitating back and hip pain, and that due to physical disabilities, he cannot walk and uses a wheelchair for mobility. Dkt. No. 60-1 ¶ 2. Additionally, he drives a specially equipped truck with a chair and has been issued a Disabled Person Placard by the California Department of Motor Vehicles. *Id*. ¶¶ 3-4.

Mr. Shaw alleges that currently and during the time of his visit to the Restaurant, defendants Pamela Sue Kelley, Randy Kelley, and Michele Kelley owned the land on which the Restaurant sits. Dkt. No. 14 ¶¶ 2-7. The Kelleys state that they owned the land until January 19, 2017, when ownership was transferred to an entity identified as "1349 Blossom Hill Road, LLC." Dkt. No. 59-10 at 38-39, 48-49, 58-59.[3] Nevertheless, they have not contested Mr. Shaw's assertion as to their ownership of the subject property. Defendant Albert Berger says that he leases the property and is an operator of the Restaurant. *Id*. at 68-69; Dkt. No. 25 ¶ 3.

On August 21, 2014, Mr. Shaw visited the Restaurant. This is the sole visit at issue in this litigation. Dkt. No. 60-1 ¶ 5; Dkt. No. 59-5. As described in his First Amended Complaint ("FAC"), the operative pleading, and in his declaration submitted in support of the present motion, Mr. Shaw says he encountered barriers to access in the parking lot, a path of travel to the Restaurant, and within the Restaurant itself. Specifically, he claims as follows:

*Parking Lot*

- Although there was a designated van accessible parking space, Mr. Shaw claims that it was not maintained in compliance with the Americans with Disabilities Act Accessibility Guidelines ("ADAAG"). The access aisle reportedly measured less

---

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Although defendant Pamela Sue Kelley's name was omitted from defendants' consent form (Dkt. No. 19), the docket entry for that document indicates that all defendants, including Pamela Sue Kelley, consent to magistrate judge jurisdiction, and defense counsel confirmed the same at the motion hearing.

[3] All pin cites are to the page number that appears on the ECF header on the cited document.

than 216 inches in length and the "NO PARKING" lettering was faded; the access aisle adjacent to the van accessible parking space allegedly was less than 96 inches wide; and the van accessible parking space itself reportedly measured less than 216 inches in length. Dkt. No. 14 ¶¶ 16-19, 23; Dkt. No. 60-1 ¶¶ 7-8.

- Signage bearing the International Symbol of Accessibility ("ISA") was not mounted high enough (i.e., at least 80 inches) above the parking surface for it to easily be seen by patrons. Additionally, there allegedly were no tow-away signs or signage stating "Minimum Fine $250." Dkt. No. 14 ¶¶ 20-22; Dkt. No. 60-1 ¶¶ 9-11.

*Path of Travel*

- Although the Restaurant posted signage indicating an alternate entrance for disabled patrons, the landing at that entrance allegedly was not level, and the path of travel to that entrance reportedly had cross slopes greater than 2%. Dkt. No. 14 ¶¶ 33-35; Dkt. No. 60-1 ¶¶ 12-15.

*Transaction Counter*

- The Restaurant's transaction counter allegedly was too high. Dkt. No. 14 ¶¶ 39-40; Dkt. No. 60-1 ¶¶ 17-18.

*Restroom*

- The restroom door was too narrow; the grab bars adjacent to the toilet were too high; there was no clear floor space in front of the disposable toilet seat cover dispenser because it was mounted directly above the toilet; the flush control was not located on the wide or open side of the toilet; the toilet paper dispenser was not positioned correctly; the restroom mirror was mounted too high; and there was no clear floor space in front of the paper towel dispenser because a trash can obstructed the dispenser. Dkt. No. 14 ¶¶ 44-50; Dkt. No. 60-1 ¶¶ 23-29.

*Dining Tables*

- Mr. Shaw claims the none of the dining tables provided enough knee clearance for him to be able to eat his food at a table, and he was forced to stay in the aisles and

eat his meal.  Dkt. No. 14 ¶ 59; Dkt. No. 60-1 ¶¶ 19-20.

Mr. Shaw avers that these access violations caused him difficulty, discomfort, frustration and embarrassment.  Dkt. No. 60-1 ¶ 30.

On June 6, 2018, Mr. Shaw's expert, Gary Waters, inspected the Restaurant's facilities.  In a report dated June 9, 2018, Mr. Waters identified a number of additional alleged barriers to access that were not included in Mr. Shaw's FAC.  Dkt. Nos. 59-8, 59-9.  Although Mr. Shaw was given an opportunity to seek leave to amend his pleadings, he did not do so.  Dkt. No. 49.

Mr. Shaw now seeks summary judgment on all of the alleged barriers listed in Mr. Waters' June 9, 2018 report.  He also requests $8,000 in statutory damages, i.e., $4,000 for barriers he encountered during his visit to the Restaurant and an additional $4,000 for "ongoing deterrence." Dkt. No. 59-1 at 20.  Defendants oppose summary judgment on three grounds:  (1) any alleged barriers that are not contained in the FAC are not properly at issue in this litigation; (2) a report prepared by their expert, Mr. Kim Blackseth, raises genuine issues of material fact with respect to the continued existence of accessibility violations; and (3) Mr. Shaw's statutory damages award (if any) should be limited to no more than $4,000 because there is no basis for an additional $4,000 for "ongoing deterrence."

As discussed in the Court's interim order on the present motion, pursuant to *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011), any additional alleged barriers identified only in Mr. Waters' report, and not in any pleading, are not properly at issue in this matter.  Dkt. No. 74.  Mr. Shaw concedes that his failure to amend his FAC impacts his ability to seek redress for additional barriers not identified in his pleadings, and he offers no arguments with respect to the specific items in Mr. Waters' report that defendants contend should not be considered.  Dkt. No. 76.  Accordingly, Mr. Shaw's motion for summary judgment is denied as to the following alleged barriers listed in Mr. Waters' report:  Items 3-7, 10, 12-20, and 23-24.[4]

The remainder of this order addresses only those barriers that defendants appear to agree properly are before the Court.  For the reasons discussed below, the Court grants Mr. Shaw's

---

[4] As discussed below, the Court believes that defendants listed Items 21 and 22 in error, and meant to list Item 20 instead.  Additionally, the Court will consider Item 25 in Mr. Waters' report.

United States District Court
Northern District of California

motion for summary judgment in part and denies it in part.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *See Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See id.* A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248-49.

## III. DISCUSSION

### A. ADA Claim

Title III of the ADA prohibits discrimination by places of public accommodation: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). For purposes of Title III, discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." *Id*. § 12182(b)(2)(A)(iv). "Readily achievable" means "easily accomplishable and

able to be carried out without much difficulty or expense." *Id.* § 12181(9).

To prevail on his Title III discrimination claim, Mr. Shaw must show that (1) he is disabled within the meaning of the ADA; (2) defendants are private individuals or entities that own, lease, or operate a place of public accommodation; and (3) he was denied public accommodations by defendants because of his disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). To succeed on an ADA claim based on architectural barriers, Mr. Shaw "must also prove that: (1) the existing facility presents an architectural barrier prohibited under the ADA; and (2) the removal of the barrier is readily achievable." *Ridola v. Chao*, No. 16-cv-02246-BLF, 2018 WL 2287668, at *5 (N.D. Cal., May 18, 2018) (citations omitted).

Under the ADA, a physical impairment that substantially affects a major life activity, such as walking, qualifies as a disability. 42 U.S.C. §§ 12102(1)(A), 12102(2)(A). Mr. Shaw has presented evidence that he is disabled within the meaning of the ADA, and defendants have presented no argument or evidence to the contrary. Dkt. No. 60-1 ¶¶ 2-4. Additionally, the Restaurant indisputably is a place of public accommodation. 42 U.S.C. § 12181(7)(B) (listing "a restaurant, bar, or other establishment serving food or drink" as a "public accommodation"). And as discussed, defendants do not contest that they are private individuals or entities that own, lease, or operate the Restaurant. Further, defendants do not contend that remedying the alleged barriers is not readily achievable. Dkt. No. 59-10 at 40-41, 50-52, 60-62, 70-73.

The only issue is whether Mr. Shaw was denied full and equal access to the Restaurant because of his disability. That element of his claim is satisfied if Mr. Shaw establishes a violation of applicable accessibility standards. *See Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 945 (9th Cir. 2011). As discussed below, defendants do not present any evidence contesting Mr. Shaw's claim that he encountered barriers to access during his August 21, 2014 visit. Indeed, defendants submitted no evidence whatsoever in support of their opposition to summary judgment. Rather, the focus of defendants' opposition is that there are genuine issues of material fact that preclude summary judgment as to the continued existence of any alleged barriers. In making that

argument, they rely solely on Mr. Blackseth's February 24, 2016 report,[5] which is based on an

inspection Mr. Blackseth conducted in January 2016 and which predates Mr. Waters' report by

about two and a half years.[6]

The Court addresses each of the barriers alleged by Mr. Shaw.

### 1. Parking Lot

As discussed, Mr. Shaw says that at the time of his August 21, 2014 visit to the Restaurant,

there were several access barriers in the parking lot. He says there were no tow-away signs or

signage stating "Minimum Fine $250"; the access aisle measured less than 216 inches in length

and the "NO PARKING" lettering was faded; the access aisle adjacent to the van accessible

parking space allegedly was less than 96 inches wide; and the van accessible parking space itself

reportedly measured less than 216 inches in length.

With respect to parking spaces, the 2010 ADA Standards for Accessible Design ("2010

Standards") requires, among other things, that "van parking spaces shall be 132 inches (3350 mm)

wide minimum" and must have an adjacent access aisle. 2010 Standards § 502.2. However,

"[v]an parking spaces shall be permitted to be 96 inches (2440 mm) wide minimum where the

access aisle is 96 inches (2440 mm) wide minimum." *Id*.; *see also* 1991 ADA Standards for

Accessible Design ("1991 Standards") § 4.1.2(5) (requiring access aisles to be at least 96 inches

wide).[7] Additionally, access aisles must "extend the full length of the parking spaces they serve"

and must also "be marked so as to discourage parking in them." 2010 Standards §§ 502.3.2,

502.3.3. Although Mr. Shaw asserts that "[u]nder the ADA, the method, color of marking and

length of the parking space are to be addressed by state or local laws or regulations," (Dkt. No. 59-

1 at 13) he cites no clear authority for that assertion; he simply points to an "Advisory" notice in

---

[5] Defendants rely on a copy of Mr. Blackseth's report that Mr. Shaw submitted with his motion papers.

[6] Indeed, Mr. Blackseth's report seems to have been prepared in connection with a different matter styled "Johnson v. Berger." Dkt. No. 59-7.

[7] At times, Mr. Shaw refers to both the 1991 Standards and the 2010 Standards and does not clearly explain why he refers to both and which standard applies. Defendants, however, do not take issue with any of the ADA standards Mr. Shaw cites.

United States District Court
Northern District of California

the 2010 Standards regarding § 502.3.3   Mr. Shaw then proceeds to discuss the requirements of Title 24 of the California Code of Regulations, also known as the California Building Code. However, at least one court in this district, presiding over another case filed by the same law firm representing Mr. Shaw, rejected the plaintiff's attempts to premise an ADA violation on the California Building Code, concluding that the Advisory notice Mr. Shaw cites is simply "a warning to businesses that they may <u>also</u> have to comply with state-law requirements." *Johnson v. 42816 Mission Blvd. LLC*, No. 17-cv-03040-CRB, 2018 WL 3008677, at *2 (N.D. Cal., June 15, 2018).  This Court agrees that a purported failure to comply with a provision of the California Building Code is a violation of the ADA.  Moreover, Mr. Shaw's Unruh Act claim is based solely on purported violations of the ADA; it is not based on any separate alleged violations of state laws or regulations.  Dkt. No. 14 ¶ 102; Dkt. No. 59-1 at 18.

Mr. Shaw presents no evidence substantiating the measurements of the accessible parking space and access aisle he claims were too short or not wide enough.  He refers the Court to photos of the Restaurant and property, stating that they "truly and accurately depict the violations [he] encountered at the [Restaurant] on [his] visit."  Dkt. No. 60-1 ¶ 31.  However, those photos contain no information about the measurements of the accessible parking space and access aisle.  Additionally, the photos appear to be dated June 11, 2016, nearly two years after Mr. Shaw's visit.  Dkt. No. 59-6.  Nevertheless, he avers that as he pulled into the accessible parking space, he realized that there was not enough room for him to deploy his wheelchair and to exit his vehicle comfortably.  Dkt. No. 6-1 ¶ 8.  He also states that he did not see any tow away signage or any signs containing warnings about fines.  *Id.* ¶ 11.  He does not say what, if anything, he observed about the condition of the "NO PARKING" lettering in the accessible space.

Defendants have not presented any evidence or arguments to refute Mr. Shaw's claim that he encountered these alleged barriers on the day of his visit.

Even so, injunctive relief is all that is available to Mr. Shaw under the ADA, *see M.J. Cable, Inc.*, 481 F.3d at 730, and the record suggests that these issues may not currently exist at the property.  Mr. Shaw asserts that the alleged inaccessible conditions remaining at the property "are fully set forth" in Mr. Waters' report.  Dkt. No. 59-1 at 12 n.2.  Mr. Waters' report, however,

says nothing about these items. Indeed, photos appended to the report suggest that at least some of these items, such as tow-away signage, may have been remedied. *See* Dkt. No. 59-9 at 17.

Mr. Waters' report does address ISA signage, which Mr. Shaw says was not mounted high enough (i.e., at least 80 inches) above the parking surface for it to easily be seen by patrons. Dkt. No. 59-9 at 15 (Item 26); Dkt. No. 14 ¶ 20; Dkt. No. 60-1 ¶¶ 9-10. According to Mr. Waters' report, this constitutes a violation of 2010 ADA Standards section 502.6, which among other things, requires ISA signs to be "60 inches (1525 mm) minimum above the finish floor or ground surface measured to the bottom of the sign." 2010 Standards § 502.6. Defendants contend that this is a different violation than the one alleged in the FAC, presumably because the FAC alleges that ISA signage must be at least *80* inches above the parking surface. Despite that discrepancy, the Court is not persuaded that the nature of the violation is substantively different than the one alleged in Mr. Shaw's FAC.

In any event, defendants' main contention appears to be that there are triable issues of fact with respect to the height of the ISA sign because their expert Mr. Blackseth reportedly opined that "there have been no alterations that would trigger an additional signage requirement."[8] Dkt. No. 75 at 3. However, in the cited portion of his report, Mr. Blackseth does not discuss ISA signage height at all; he addresses an entirely different matter, i.e., whether defendants were required to have additional signage below the ISA symbol stating "Minimum Fine $250." Dkt. No. 59-7 at 11. Having presented the Court with no other evidence or argument with respect to this issue, defendants have failed to demonstrate that there are genuine issues of triable fact that preclude summary judgment. Accordingly, Mr. Shaw's motion for summary judgment as to the height of the ISA sign is granted.

Additionally, Mr. Waters found that the accessible parking space extends into the drive aisle at the entrance to the shopping center. Dkt. No. 59-9 (Item 25).[9] His report notes that this is

---

[8] In referring to "alterations," defendants apparently mean Mr. Blackseth's observations that the Restaurant is an existing facility (not a new construction) built around 1965 and that no alterations were made to the facility that would trigger what he calls the "2010 Alteration Standards." Dkt. No. 59-7 at 3-4.

[9] Although defendants contend that this item was not in the FAC, the accessible parking space is a

a violation of 2010 Standards § 502.3.4, which provides:

> 502.3.4 Location. Access aisles shall not overlap the vehicular way.
> Access aisles shall be permitted to be placed on either side of the
> parking space except for angled van parking spaces which shall have
> access aisles located on the passenger side of the parking spaces.

Defendants having presented no evidence creating a genuine issue of material fact as to this issue, Mr. Shaw's motion for summary judgment is granted as to this item.[10]

Because Mr. Shaw has not presented any evidence as to the continued existence of the other alleged barriers in the parking lot, his motion as to those matters is denied.

### 2. Slopes and Cross Slopes in the Path of Travel from the Accessible Parking Space

Mr. Shaw claims that while the Restaurant posted signage indicating an alternate entrance for disabled patrons, the landing at that entrance allegedly was not level, and the path of travel to that entrance had cross slopes greater than 2%. Dkt. No. 14 ¶¶ 33-35; Dkt. No. 60-1 ¶¶ 12-15. Mr. Shaw says that as he approached the alternate entrance, he feared he might lose his balance and fall from his wheelchair. Dkt. No. 60-1 ¶ 16.

Mr. Waters found that slopes and cross slopes in the parking lot and in paths of travel at the Restaurant are too steep, measuring up to 5.4% in the accessible parking space, and ranging between 3.4% and 3.8% in paths of travel. Dkt. No. 59-9 at 15 (Items 27, 28-30).[11] Mr. Shaw does not explain whether the paths of travel discussed in Mr. Waters' report are the same as the

---

feature Mr. Shaw identified in his pleading as presenting access barriers. As discussed below, defendants do not object to the Court's consideration of other items (e.g., the transaction counter and the restroom side wall grab bar) which were listed in Mr. Shaw's FAC, but for which different violations are now identified. Accordingly, the Court will consider Item 25 in Mr. Waters' report.

[10] In Item 25, Mr. Waters also states that the "accessible route from the access aisle to the curb ramp is through the drive aisle with your back to on-coming traffic." Dkt. No. 59-9 at 15. That issue, however, does not appear to be covered by 2010 Standards § 502.3.4, which is the sole federal standard Mr. Waters cites for Item 25.

[11] Mr. Waters also noted that there is no accessible path of travel from a site arrival point to a Restaurant entry and no accessible path connecting the Restaurant to the rest of the shopping center where it apparently is located. Dkt. No. 59-9 at 10 (Items 1, 2). Although these are not items alleged in Mr. Shaw's FAC, defendants also do not specifically object to Mr. Waters report on that ground. As discussed above, both sides appear to treat the issues concerning the path of travel to the Restaurant as one concerning only slopes and cross slopes.

route to the alternate entrance he describes in his FAC and declaration. Nevertheless, the 2010

Standards provide that "[a]ccess aisles shall be at the same level as the parking spaces they serve,"

and "[s]lopes not steeper than 1:48 shall be permitted." 2010 Standards § 502.4. Additionally,

"[t]he running slope of walking surfaces shall not be steeper than 1:20. The cross slope of

walking surfaces shall not be steeper than 1:48." *Id*. § 403.3. Further, Mr. Shaw says that both the

1991 and 2010 Standards require the areas in front of doorways to be "level and clear," although

that particular language only appears in the section of the 1991 Standards he cites. *See* 1991

Standards § 4.13.6; 2010 Standards § 404.2.4.

Defendants point out that Mr. Blackseth concluded that there is an accessible path of travel

to the Restaurant that crosses a vehicular path, and that the slope is "less than 5% in the direction

of travel" and that the "cross slope is 2% or less." Dkt. No. 59-7 at 7. He also found that although

the slope along another exterior walkway was greater than 2%, the slope nonetheless was "within

conventional industry tolerance." *Id*. at 8. While Mr. Blackseth noted that the cross slope at

another pathway was 4.4%, he concluded that no corrective action was required because only one

accessible route is required. *Id*. at 9. With respect to the access aisle, Mr. Blackseth noted that the

slope in the direction of travel was 3.5%. *Id*. at 11. He did not find that to be an access barrier,

but he nonetheless recommended that the Restaurant provide a slope of 2% or less in any direction

within the accessible parking space. *Id*.

Mr. Shaw disagrees that an accessible path of travel properly may cross a vehicular path,

but he argues that that particular point is irrelevant. Dkt. No. 70 at 1. In his view, the primary

issue is whether any accessible route actually complies with the applicable guidelines. Thus, Mr.

Shaw emphasizes that no matter where the path of travel is located relative to the vehicular path,

Mr. Waters found that the slope of the accessible parking space and the cross slopes for the paths

of travel from the access aisle to the curb and in front of the Restaurant are too steep. *Id*. at 1-2.

Insofar as Mr. Blackseth concluded that there was at least one compliant accessible route

and that slopes and cross slopes of paths of travel did not constitute access violations, defendants

maintain that Mr. Blackseth's findings create a triable issue as to the alleged barriers. As

discussed, however, Mr. Blackseth's report was prepared in February 2016, several months before

Mr. Shaw filed the present lawsuit and over two years before Mr. Waters conducted his inspection and prepared his report. Mr. Blackseth's report pertains to the condition of the property as of January 2016 when he conducted his site inspection. For that reason, it is insufficient to create a genuine issue of material fact as to Mr. Waters' findings that currently, the access aisle and the path of travel to the Restaurant exceed the maximum allowable slopes and cross slopes. Moreover, as noted above, Mr. Blackseth agreed that slopes in the accessible parking space should be 2% or less. Dkt. No. 59-7 at 11. Accordingly, Mr. Shaw's motion for summary judgment is granted with respect to the slope in the accessible parking space and the cross slopes in the paths of travel to the Restaurant.

However, with respect to Mr. Shaw's claim that the landing at the Restaurant's alternate entrance was not level, his motion for summary judgment is denied. Mr. Shaw avers that he encountered that barrier on the day of his visit. Dkt. No. 60-1 ¶ 15, However, Mr. Waters' report does not address it, and Mr. Shaw has presented no evidence as to the continued existence of that alleged barrier.

### 3. Transaction Counter

Mr. Shaw claims that during his August 2014 visit, the Restaurant's transaction counter was too high and had no lowered portion that was a maximum of 36 inches high. Dkt. No. 14 ¶¶ 39-40; Dkt. No. 60-1 ¶ 17. He states that he could barely see the top of the counter and was not able to conduct his transaction independently. Dkt. No. 60-1 ¶ 18. In his opening summary judgment brief, however, Mr. Shaw concedes that there now is a lowered counter at the Restaurant. Dkt. No. 59-1 at 15. Accordingly, his motion as to that particular issue is denied as moot.

Instead, Mr. Shaw points to Mr. Waters' report, which takes issue with the counter because it is located around the corner from the counter for able-bodied patrons. Dkt. No. 59-9 at 12 (Item 11). Mr. Waters notes that there is no point of sale machine at the accessible counter and that a menu board is not visible from the accessible counter as at the counter for able-bodied patrons. He states that the Restaurant must provide an accessible counter section at the same location as able-bodied guests. *Id.* Section 227.3 of the 2010 Standards provides that "[w]here counters are

12

dispersed throughout the building or facility," accessible counters "also shall be dispersed."

Although defendants argue that this is a different violation than the one alleged in Mr. Shaw's FAC, the location of the counter is not one of the items that defendants contend are not properly before the Court due to Mr. Shaw's failure to include it in an amended pleading. Defendants having presented no evidence or argument refuting Mr. Shaw's evidence regarding the current inaccessibility of the counter location, Mr. Shaw's motion for summary judgment as to the transaction counter is granted.

### 4. Restroom

Mr. Shaw claims that during his August 2014 visit, he encountered several access barriers in the restroom:

- The restroom door was too narrow, measuring less than 32 inches in width.
- The grab bars adjacent to the toilet, mounted more than 36 inches above the floor, were too high.
- There was no clear floor space in front of the disposable toilet seat cover dispenser because it was mounted directly above the toilet.
- The flush control was not located on the wide or open side of the toilet.
- The toilet paper dispenser was not properly positioned.
- The restroom mirror was mounted too high, such that its bottom edge was more than 40 inches above the floor.
- There was no clear floor space in front of the paper towel dispenser because a trash can obstructed the dispenser.

Dkt. No. 14 ¶¶ 44-50; Dkt. No. 60-1 ¶¶ 23-29. Mr. Shaw has cited standards demonstrating that these are access violations. 1991 Standards §§ 4.13.5, 4.16.4 & Fig. 29, 4.16.5, 4.17.3, 4.19.6, 4.22.2, 4.27.2; 2010 Standards §§ 309.2, 404.2.3, 603.3, 604.6, 604.7, 609.4. Defendants have not presented any evidence or argument to the contrary. With two exceptions, however, Mr. Waters' report does not indicate that these conditions continue to exist at the Restaurant. *See* Dkt. No. 59-9 at 13-14.

The two items Mr. Waters does address are the positioning of the side wall grab bars and

the toilet paper dispenser.  First, he found that the position of the side wall grab bars present an access barrier, albeit his report does not take issue with the height of the bars (which was the subject of Mr. Shaw's FAC), but rather found that the bars are positioned too far from the back wall.  Section 604.5.1 of the 2010 Standards requires side wall grab bars to be located no more than 12 inches from the rear wall.  Mr. Waters' report indicates that the side wall grab bars in the Restaurant's restroom are 17 inches from the back wall.  Dkt. No. 59-9 at 14 (Item 21).  Second, he found that the toilet paper dispenser (a dual-roll dispenser) was positioned such that the dispenser outlet for each roll is not located within seven to nine inches from the front of the toilet to the centerline of the dispenser outlet, as required by 2010 Standards § 604.7.  *Id.* (Item 22).

As noted above, defendants erroneously concluded that Mr. Shaw's FAC did not address the position of the toilet paper dispenser.[12]  And, while defendants argue that Mr. Waters identified a different violation with respect to the side grab bars than the one alleged in the complaint, they do not contend that this is an item that should not be considered by the Court.  Defendants having presented no evidence to refute Mr. Waters' report as to the position of the side wall grab bars and toilet paper dispenser, Mr. Shaw's motion for summary judgment as to those issues is granted.

As for the remaining items Mr. Shaw identified as barriers, because he has not presented evidence that those conditions continue to exist at the Restaurant, his motion for summary judgment is denied.

### 5.    Dining Tables

Mr. Shaw claims that during his August 2014 visit, the Restaurant lacked accessible dining tables because they did not provide enough knee clearance for him.  As a result he says he had to stay in the aisles to eat.  Dkt. No. 60-1 ¶¶ 19-20.  He points out that under the ADA, accessible tables must provide knee clearance that is at least 27 inches high and 30 inches wide.  1991 Standards § 4.32.3; 2010 Standards § 306.3.[13]

---

[12] The Court believes that defendants meant to list Item 20 (concerning the rear wall grab bar) as a matter that is not properly before the Court because the FAC does not mention the rear wall grab bar at all.

[13] Depending on which standard applies, Mr. Shaw acknowledges that the 1991 Standards and 2010 Standards differ as to how deep knee clearance must be.

It is undisputed that the Restaurant now has one accessible table, although Mr. Shaw says it is located next to the restroom, a location that he finds insulting. Nevertheless, Mr. Waters' report states that, in view of the number of seats at the Restaurant, a minimum of eight accessible tables is required and that the tables must be properly dispersed throughout the facility. Dkt. No. 59-9 at 11 (Items 8-9); *see also* 2010 Standards §§ 226.1, 226.2 (requiring "at least 5 percent of the seating spaces and standing spaces at the dining surfaces" to be accessible and requiring that accessible dining spaces "shall be dispersed throughout the space or facility . . .."). Defendants contend that Mr. Waters miscounted the number of tables at the Restaurant. However, they have presented no evidence to support that contention. Nor have they offered any other argument in opposition to this particular item. Accordingly, Mr. Shaw's motion for summary judgment as to the dining tables is granted.

### B.     Unruh Act Claim

"Because the Unruh Act is coextensive with the ADA and allows for monetary damages, litigants in federal court in California often pair state Unruh Act claims with federal ADA claims." *MJ Cable, Inc.*, 481 F.3d at 731. "Any violation of the ADA necessarily constitutes a violation of the Unruh Act." *Id.* (citing Unruh Act, Cal. Civ. Code § 51(f)). Thus, to the extent Mr. Shaw has an ADA claim based on the existing identified barriers, he also has an Unruh Act claim based on those barriers. The Court having granted summary judgment for Mr. Shaw on several matters under the ADA as discussed above, summary judgment is also granted in his favor for those same matters under the Unruh Act.

### C.     Requested Relief

#### 1.     Injunctive Relief

Aggrieved individuals "may obtain injunctive relief against public accommodations with architectural barriers, including 'an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities.'" *MJ Cable, Inc.*, 481 F.3d at 730 (quoting 42 U.S.C. § 12188(a)(2)). Injunctive relief is also available under the Unruh Act. *See* Cal. Civ. Code § 52.1(h). "A plaintiff need not satisfy '[t]he standard requirements for equitable relief . . . when an injunction is sought to prevent the violation of a federal statute [that]

specifically provides for injunctive relief.'" *Love v. Griffin*, No. 17-cv-00976, 2018 WL 4471073 at *6 (N.D. Cal., Aug. 2018) (quoting *Moeller v. Taco Bell*, 816 F. Supp. 2d 831, 859 (N.D. Cal. 2011)). Thus, injunctive relief is proper under the ADA where the plaintiff establishes that "architectural barriers at the defendant's establishment violate the ADA and the removal of the barriers is readily achievable." *Ridola*, 2018 WL 2287668 at *13 (citing *Moreno v. La Curacao*, 463 Fed. Apps. 669, 670 (9th Cir. 2011)). For the reasons discussed above, Mr. Shaw has done so here and is entitled to injunctive relief with respect to those items for which summary judgment is granted in his favor.

### 2. Statutory Damages[14]

Mr. Shaw moves for summary judgment that he is entitled to statutory damages of $8,000, i.e. $4,000 for the barriers he encountered during his August 21, 2014 visit to the Restaurant and an additional $4,000 for "ongoing deterrence." Dkt. No. 59-1 at 20. Defendants argue that there is no authority for "ongoing deterrence" damages and that Mr. Shaw's damages should be limited to $4,000. Mr. Shaw contends that the additional deterrence damages are authorized under California Civil Code § 55.56.

While monetary damages are not available in private suits under Title III of the ADA, the Unruh Act, Cal. Civ. Code § 52(a), provides a minimum statutory damages award of $4,000 "for each occasion an individual is denied equal access to an establishment covered by the Unruh Act . . . ." *Ridola*, 2018 WL 2287668 at *15. Mr. Shaw "need not prove [he] suffered actual damages to recover the independent statutory damages of $4,000." *MJ Cable, Inc.*, 481 F.3d at 731.

As relevant here, section 55.56 allows for statutory damages under California Civil Code § 52 "only if a violation or violations of one or more construction-related accessibility standards denied the plaintiff full and equal access to the place of public accommodation *on a particular occasion*." Cal. Civ. Code § 55.56(a) (emphasis added). Thus, statutory damages are available in

---

[14] Mr. Shaw notes that he chose statutory damages as "a concession" made for purposes of the present motion for summary judgment. Although he says that he is not bound by that election and may seek actual damages if the case proceeds further, he has cited no authority for that proposition.

only two circumstances: (1) "if the plaintiff personally encountered the violation *on a particular occasion*" or (2) "the plaintiff was deterred from accessing a place of public accommodation *on a particular occasion*." *Id.* § 55.56(b) (emphasis added).

With respect to the first circumstance, for the reasons discussed above, Mr. Shaw has demonstrated that he encountered access barriers during his August 21, 2014 visit to the Restaurant, and defendants have not presented evidence creating a genuine issue of material fact precluding summary judgment as to those matters. Accordingly, the Court awards Mr. Shaw $4,000.

As for the second circumstance, Mr. Shaw states that he "would very much like the ability to safely and independently access the facilities at [the Restaurant]," and that "[o]nce the violations are removed [he] will return and continue to patronize the [Restaurant] on a regular and ongoing basis." Dkt. No. 60-1 ¶ 34. However, Mr. Shaw has not demonstrated that he is entitled to an additional $4,000 for general "ongoing deterrence." A deterrence gives rise to damages only if both of the following conditions are met:

> (1) The plaintiff had actual knowledge of a violation or violations that prevented or reasonably dissuaded the plaintiff from accessing a place of public accommodation that the plaintiff intended to use *on a particular occasion*.

> (2) The violation or violations would have actually denied the plaintiff full and equal access if the plaintiff had accessed the place of public accommodation *on that particular occasion*.

*Id.* § 55.56(d)(1)-(2) (emphasis added). The plain language of the statute indicates that general "ongoing deterrence" is not a sufficient basis for damages. *See Yates v. Vishal Corp.*, No. 11-cv-00643-JCS, 2013 WL 6073516, at *6 (N.D. Cal., Nov. 18, 2013) (awarding $4,000 in deterrence damages where the plaintiff averred that he was deterred from staying at the subject hotel on at least one occasion). Mr. Shaw makes only a bare, unsupported assertion that he would return regularly to the Restaurant if the barriers were removed. Such an assertion is insufficient to support summary judgment in his favor on this point.

Mr. Shaw relies on *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) and *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133 (9th Cir. 2002). But, neither case

addresses deterrence damages under California Civil Code §55.56.

Because Mr. Shaw has presented no evidence that he was deterred from visiting the Restaurant on a particular occasion following his initial visit, his motion for summary judgment awarding an additional $4,000 in damages is denied.

## IV.  CONCLUSION

Based on the foregoing, Mr. Shaw's motion for summary judgment is granted in part and denied in part as follows:

1.  His motion is GRANTED as to the following items:

    a.  The height of the ISA sign in the parking lot (Mr. Waters' report, Item 26).

    b.  The location of the accessible parking space (Mr. Waters' report, Item 25).

    c.  The slope of the accessible parking space  (Mr. Waters' report, Item 27).

    d.  The cross slopes in the paths of travel (Mr. Waters' report, Items 28-30).

    e.  The location of the transaction counter (Mr. Waters' report, Item 11).

    f.  The position of the side wall grab bar and toilet paper dispenser in the restroom (Mr. Waters' report, Items 21-22).

    g.  The number and dispersion of accessible dining tables  (Mr. Waters' report. Items 8-9).

2.  Defendants shall, in compliance with the ADAAG, remove the barriers identified by Mr. Waters and recited in his June 9, 2018 report (Dkt. No. 59-9) as follows:

    a.  Raise the ISA signage so that the bottom of the lowest sign is not less than 60 inches above the ground surface (Mr. Waters' report, Item 26).

    b.  Reconfigure or relocate the accessible parking space to comply with 2010 Standards § 502.3.4 (Mr. Waters' report, Item 25).

    c.  Provide a slope throughout the accessible parking space and access aisle of not more than 1:48 (Mr. Waters' report, Item 27).

    d.  Provide a cross slope of not more than 1:48 in the paths of travel identified in Mr. Waters' report (Mr. Waters' report, Items 28-30).

    e.  Provide an accessible transaction counter at the same location as the counter for

able-bodied patrons (Mr. Waters' report, Item 11).

  f. Relocate the side wall grab bar in the restroom so that it is no more than 12 inches from the rear wall (Mr. Waters' report, Item 21).

  g. Provide a single roll oversized dispenser or a stacked, dual-roll dispenser that is positioned seven to nine inches from the front of the toilet to the centerline of the dispenser outlet (Mr. Waters' report, Item 22).

  h. Provide at least eight accessible seating locations distributed around the dining area (Mr. Waters' report, Items 8-9).

  3. Mr. Shaw's motion for summary judgment is otherwise DENIED as to all other barriers. In addition, Mr. Shaw may not proceed in this action to assert any claims with respect to the alleged barriers listed in Mr. Waters' report as Items 3-7, 10, 12-20, and 23-24, as those items were not identified in the operative pleading.

  The parties shall promptly confer about those matters as to which the Court has denied Mr. Shaw's motion for summary judgment to determine whether there truly are any issues that must be tried. By February 6, 2019, they shall submit a joint report advising the Court whether a trial as to those matters is necessary. If a trial is required, the parties are reminded that they must begin their Final Pretrial Conference submissions by February 6, 2019, in compliance with the Court's Standing Order re Pretrial Preparation, https://cand.uscourts.gov/filelibrary/3444/Standing-order-re-pretrial-preparation-in-civi.pdf.

  **IT IS SO ORDERED.**

Dated: February 1, 2019

_Virginia K. DeMarchi_
VIRGINIA K. DEMARCHI
United States Magistrate Judge