UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CECIL EUGENE SHAW,<br><br>            Plaintiff,<br><br>    v.<br><br>RANDY KELLEY, et al.,<br><br>            Defendants. | Case No.16-cv-03768-VKD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. No. 109 |

## I. BACKGROUND

Plaintiff Cecil Shaw filed this disability rights action, claiming that, during an August 21, 2014 visit, he was denied full and equal access at a Burger Pit restaurant ("Restaurant") in San Jose, California. He asserted claims under Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51-53.[1]

The Court granted in part and denied in part Mr. Shaw's motion for summary judgment. That motion was granted with respect to several barriers in the parking lot, paths of travel, dining area and restroom. Dkt. No. 79. However, the motion was denied as to a number of other barriers which no longer existed or apparently had already been remedied. *See, e.g., id.* at 8-9. Mr. Shaw's motion was also denied as to 17 of the 30 alleged barriers that were identified in his expert's report, but which were not included in any of Mr. Shaw's complaints.[2] *Id.* at 5. The

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

[2] Shortly after defendants answered the original complaint, the parties stipulated to the filing of a

Court awarded $4,000 in statutory damages under the Unruh Act, but denied Mr. Shaw's request for an additional $4,000 for "ongoing deterrence" damages. *Id*. at 16-18.

Mr. Shaw subsequently filed a notice of settlement, stating that the parties reached a settlement "with respect to the outstanding injunctive issues." Dkt. No. 92. However, there was some delay in the proceedings after defendants failed to respond to Mr. Shaw's proposed consent decree. Additionally, Mr. Shaw's initial proposed consent decree filed with the Court contained what Mr. Shaw later said were inadvertent errors (for example, statements indicating that the amount of damages were still disputed). Dkt. Nos. 102-104. The Court issued an order to show cause why the parties should not be sanctioned. Dkt. No. 101. Following a hearing on the matter, the Court discharged the order to show cause, and the parties jointly submitted a corrected proposed consent decree. Dkt. Nos. 106, 108. That proposed decree indicated that with respect to injunctive relief, the parties agreed that defendants would "ensure that [the] threshold at all the entrance doors are less than 1/2 [inch] in height." Dkt. No. 110. at 8. The Court entered that consent decree on April 29, 2019. Dkt. No 110.

Because the parties were unable to resolve Mr. Shaw's request for attorneys' fees, he now moves for an award of fees and costs in the amount of $65,515.75. Defendants oppose the motion. At the Court's request, Mr. Shaw submitted supplemental papers specifying the time (initially provided as estimates) his attorneys spent preparing his reply papers and appearing at the motion hearing. Dkt. Nos. 117, 118. Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court grants Mr. Shaw's motion in part and denies it in part.

**II. DISCUSSION**

The ADA gives courts the discretion to award attorney's fees, including litigation expenses and costs, to prevailing parties. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. § 12205). Similarly, the Unruh Act provides for an award of fees "as may be determined by the court." Cal. Civ. Code §§ 52(b)(3), 52.1(c).

Whether calculating attorney's fees under California or federal law, courts follow the

---

First Amended Complaint ("FAC") that added a defendant. Dkt. No. 11. Mr. Shaw did not further amend his pleadings.

lodestar approach. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), abrogated on other grounds by *Tex. State Teachers Ass'n. v. Garland Indep. Sch. Dist*., 489 U.S. 782 (1989). The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. *Id.*

Preliminarily, the Court notes that although Mr. Shaw was not successful as to all of the barriers he pursued in this case, he is a prevailing party, having obtained both injunctive relief and damages. For the first time at the motion hearing, defendants took the position that Mr. Shaw is not a prevailing party. However, defendants made no such argument in their papers. Moreover, as discussed below, the Court understands defendants' argument as one more appropriately directed to a reduction in the requested fees.

### A. Reasonable Hourly Rate

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), reh'g denied, amended on other grounds, 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). The fee applicant has the burden of producing evidence, other than declarations of interested counsel, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. *Blum*, 465 U.S. at 896 n.11. "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Co.*, 896 F.2d 403, 407 (9th Cir. 1990).

Mr. Shaw seeks fees based on the hourly rates of the following 14 attorneys: Mark Potter ($650/hour); Raymond G. Ballister ($650/hour); Phyl Grace ($650/hour); Mary Melton ($500/hour); Dennis Price ($500/hour); Isabel Masanque ($500/hour); Chris Carson ($500/hour);

3

Amanda Seabock (sometimes referred to in the papers as "Amanda Lockhart") ($500/hour); Chris Seabock ($500/hour); Teresa Allen ($500/hour); Kushpreet Mehton ($500/hour); Matt Valenti ($410/hour); Sara Gunderson ($410/hour); and Elliott Montgomery ($410/hour).[3]

To support the reasonableness of the identified hourly rates, Mr. Shaw relies on a declaration from Mr. Potter, one of the attorneys for whom fees are sought. Dkt. No. 109-4. Mr. Potter's declaration includes a description of the attorneys' qualifications and experience, as well as a billing statement for work performed in this case. Mr. Potter's declaration concludes with the following assertion:

> Because the nature of my practice is wholly dependent on billing at a market rate, I have extensive experience with respect to what attorneys specializing in disability law and civil rights bill for civil litigation and what courts are routinely awarding and can attest that the rates billed by the Center for Disability Access for its attorneys are well within market rates.

Dkt. No. 109-4 ¶ 22. Mr. Potter does not actually identify the rates at which attorneys specializing in disability and other civil rights matters bill for civil litigation, even though he asserts that he has "extensive experience" with respect to that information, and even though he says his practice depends on "billing at a market rate."

Mr. Shaw's fees request contains scant information about the prevailing market rate for similar work performed by attorneys of comparable skill, experience, and reputation in this community. He has not submitted declarations from other attorneys attesting to the reasonableness of the claimed rates. Instead, the primary "market" on which he relies to support the claimed hourly rates is comprised of decisions between 2011 and 2019 issued by courts in this district tasked with deciding fees motions like his. These cases are listed in a chart in Mr. Shaw's moving papers. Dkt. No. 109-1 at 10-11.

---

[3] Mr. Shaw's motion papers contain no information about an additional attorney identified in the appended billing statement as "P. Price," and later identified for the Court at the motion hearing as Prathima Price. The failure to provide such information precludes an award of fees for that attorney. *See Johnson v. AutoZone*, No. 17-cv-02941-PJH, 2019 WL 2288111, at *6 (N.D. Cal. May 29, 2019) (concluding that plaintiff failed to meet his burden to justify the billing rate for an attorney where he provided no information regarding that attorney's qualifications). Accordingly, $779 in fees (i.e., 1.9 hours x $410) for work performed by Ms. Price will not be awarded.

4

Two of the cited cases, *Armstrong v. Brown*, 805 F. Supp. 2d 918 (N.D. Cal. 2011) and *Elder v. Nat'l Conference of Bar Examiners*, No. C11-00199 SI, 2011 WL 4079623 (N.D. Cal., Sept. 12, 2011) were decided at least two years before Mr. Shaw's counsel performed the services at issue here.[4] The Court is required to consider cases that were decided relatively contemporaneously with the time the work was performed. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) (noting that "in determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services."); *Bell v. Clackamas County*, 858 F.3d 858, 869 (9th Cir. 2003) (holding that it was an abuse of discretion for the district court to apply rates in effect more than two years before the work was performed). Mr. Shaw's attorneys performed work in this case from May 2016 through June 2019. In the absence of other evidence of what attorneys of comparable skill, experience, and reputation were billing for similar work performed during the relevant time period in the relevant market, the Court considers more recent decisions involving ADA disputes like this one.

Here, Mr. Shaw principally relies on *Love v. Rivendell II, Ltd., et al.*, Case No. 18-cv-03907-JST (EDL) (N.D. Cal., Mar. 11, 2019), which approved the claimed rates of $650/hour for Mr. Potter and Ms. Grace, as well as a $410 hourly rate for Ms. Carson and Mr. Price. *See Rivendell*, Dkt. No. 25 (report and recommendation); *see also* Dkt. No. 30 (order adopting report and recommendation). Mr. Shaw also cites *Rodgers v. Claim Jumper Restaurant, LLC*, No. 13-cv-5496-YGR, 2015 WL 1886708 (N.D. Cal. Apr. 24, 2015), in which the court awarded fees at an hourly rate of $525 for an attorney, based on the attorney's 20 years of experience, as well as other evidence including declarations from other ADA plaintiff's attorneys. *Id*. at *4. Additionally, Mr. Shaw cites *Rodriguez v. Barrita*, 53 F. Supp. 3d 1268 (N.D. Cal. 2014), in which the court approved hourly rates of $645 for an attorney with over 45 years of experience, $550 for an attorney with 22 years of experience, and $425 for an attorney who had been working with plaintiff's counsel's firm for about 5 years. In *Rodriguez*, counsel's requested rates were

---

[4] Additionally, as discussed below, *Elder* involved work that is not similar to the work performed the present matter.

5

either not contested by the opposing party or were supported by a declaration from another disability law attorney. *Id*. at 1278-79.

As another court in this district recently observed, the *Rivendell* decision relied on cases that concerned work that was substantially different than the work performed in the present action. *See Johnson v. AutoZone, Inc.*, No. 17-cv-02941-PJH, 2019 WL 2288111, at \*6 n.4 (N.D. Cal., May 29, 2019). For example, *Civil Rights Education and Enforcement Ctr. v. Ashford Hospitality Trust, Inc.*, No. 15-cv-00216-DMR, 2016 WL 1177950 (N.D. Cal., Mar. 22, 2016), was a complex class action matter involving 54 hotels spread among multiple states. And, in *Elder v. Nat'l Conference of Bar Examiners*, the court observed that the case set "new precedent" that caused the California State Bar to "change a policy which impacts potentially hundreds of individuals each year across California." 2011 WL 4079623 at \*4.

Messrs. Potter and Ballister and Ms. Grace each seek fees at an hourly rate of $650. Mr. Potter avers that he has been a practicing attorney for 20 years, mostly focusing on disability law; Mr. Ballister has been a practicing lawyer for 29 years, with over 10 years devoted to disability rights cases; and Ms. Grace has been practicing law for over 22 years, with approximately 10 years devoted to disability rights cases. Dkt. No. 109-4 ¶¶ 7-9. Mr. Shaw has not cited cases awarding the requested rate for Mr. Ballister's work. And with the exception of *Rivendell*, courts in this district have awarded fees based on a $425 hourly rate for Mr. Potter and Ms. Grace. *See, e.g., AutoZone, Inc.*, 2019 WL 2288111, at \*6 (citing cases); *see also, e.g., Gonzalez v. Machado*, No. 17-cv-02203-LB, 2019 WL 3017647 (N.D. Cal. July 10, 2019); *Johnson v. Express Auto Clinic, Inc.*, No. 18-cv-00464-KAW, 2019 WL 2996431 (N.D. Cal. July 9, 2019); *Johnson v. VN Alliance LLC*, No. 18-cv-01372-BLF, 2019 WL 2515749 (N.D. Cal. June 18, 2019); *Johnson v. RK Investment Properties, Inc.*, No. 18-cv-01132-KAW, 2019 WL 1575206 (N.D. Cal. Mar. 18, 2019); *Love v. Griffin*, No. 18-cv-00976-JSC, 2018 WL 4471073 (N.D. Cal. Aug. 20, 2018) (report and recommendation), No. 18-00976, Dkt. No. 23 (order adopting report and recommendation); *Arroyo v. Aldabashi*, No. 16-cv-06181-JCS, 2018 WL 4961637, at \*5 (N.D. Cal. Oct. 15, 2018); *Johnson v. Altamira Corp.*, No. 16-cv-05335-NC, 2017 WL 138469 (N.D. Cal. Mar. 27, 2017); *Shaw v. Five M, LLC*, No. 16-cv-03955-BLF, 2017 WL 747465 (N.D. Cal.

Feb. 27, 2017). More recently, this Court has approved a $475 hourly rate for Mr. Potter. *See Johnson v. Rocklin of California LLC*, No. 18-cv-06836-VKD, 2019 WL 3854308, at *11 (N.D. Cal. Aug. 16, 2019) (report and recommendation); *see also* Case No. 18-cv-06836, Dkt. No. 27 (order adopting report and recommendation); *Johnson v. Campbell Plaza Development Co.*, No. 5:18-cv-05878-SVK, Dkt. No. 26 (N.D. Cal. Sept. 27, 2019).

Within the past year, another court in this district approved rates of at least $700/hour for other attorneys at different firms. *See Martin v. Diva Hospitality Group, Inc.,* No. 16-cv-04103-EDL, 2018 WL 6710705 (N.D. Cal. Dec. 7, 2018). In that case, the court approved a rate of $700 for an attorney with 28 years of experience as a trial lawyer, with 10 years devoted exclusively to disability law; a $700 rate for an attorney who had been practicing for over 27 years, including 25 years of experience in disability matters; and a rate of $795 for an attorney who had been practicing for 49 years, with 43 years of experience in disability law. *Id*. at *2.

As recently noted by this Court, however, compared with fees awarded to other attorneys with similar experience, Mr. Shaw's request for a $650 rate appears high. *See Rocklin of California LLC*, 2019 WL 3854308 at *10. Another court in this district has noted that a rate over $700/hour is the exception, and not the norm, for disability cases. *See Chapman v. NJ Properties, Inc.*, No. 5:16-cv-02893-EJD, 2019 WL 3718585, at *4 (N.D. Cal., Aug. 7, 2019) (declining to award fees at $750/hour for an attorney with over 40 years of experience, including 25 years in disability access litigation, who had previously been awarded fees at $500/hour, and awarding fees at $600/hour instead to account for inflation). Indeed, for attorneys with approximately 20 or more years of experience, courts in this district have generally approved rates ranging from $350 to $495 in disability cases. *See, e.g., Castillo-Antonio v. Lam*, No. 18-cv-04593-EDL, 2019 WL 2642469, at *7 (N.D. Cal., Apr. 10, 2019) (approving, on a motion for default judgment, a $350 hourly rate for an attorney with over 20 years of experience); *Johnson v. Castagnola*, No. 18-cv-00583-SVK, 2019 WL 827640, at *2 (N.D. Cal., Feb. 21, 2019) (approving a $350 rate for an attorney with 20 years of litigation experience, noting that the requested rate was unopposed by defendant and in line with rates approved in the Northern District); *Wilson v. Red Robin Int'l, Inc.*, No. 17-cv-00685-BLF, 2018 WL 5982868, at *3 (N.D. Cal., Nov. 14, 2018) (approving a $495

7

rate for an attorney with 24 years of experience in civil rights litigation, including 12 years devoted to disability law and a $475 rate for an attorney with over 17 years of litigation experience and more than 8 years of experience in disability law).

As for Mr. Shaw's other attorneys, eight of them seek fees at a rate of $500/hour: Ms. Melton (approximately 24 years practice),[5] Mr. Price (approximately 8 years of practice, with 7 years in disability rights cases), Ms. Masanque (approximately 6 years of practice focusing on disability rights cases), Ms. Carson (approximately 8 years of practice, with over 5 years in disability rights cases), Ms. Allen (approximately 7 years of practice, with 2 years in disability rights cases), Ms. Seabock (approximately 6 years of practice, focusing on disability rights cases), Mr. Seabock approximately 8 years of practice, with about 4 years focusing on disability rights cases, and Mr. Mehton (approximately 9 years of practice, focusing on disability rights cases). For Mr. Price, Ms. Masanque, Ms. Carson, and Ms. Seabock, courts in this district have approved rates ranging from $300/hour, *see, e.g., Gonzalez*, 2019 WL 3017647 at \*4; *AutoZone, Inc.*, 2019 WL 2288111 at \*7, up to $350/hour, *see, e.g., Campbell Plaza Development Co.*, No. 18-cv-05878-SVK, Dkt. No. 26 at 10; *NJ Properties, Inc.*, 2019 WL 3718585 at \*4; *Express Auto Clinic, Inc.*, 2019 WL 2996431 at \*8; *Griffin*, 2018 WL 4471073 at \*8; *Arroyo*, 2018 WL 4961637 at \*5. Similarly, fees for Ms. Melton's and Mr. Mehton's work have been awarded at a $300 hourly rate. *See Gonzalez*, 2019 WL 3017647 at \*4; *AutoZone, Inc.*, 2019 WL 2288111 at \*7. The Court's research indicates that the higher $350 rate is in line with fees awarded to other attorneys with comparable or greater experience. *See, e.g., Che v. Lo*, No. 18-cv-00402-CRB, 2019 WL 2579205, at \*2 (N.D. Cal., June 24, 2019) (on a motion for default judgment, approving a rate of $400/hour for an attorney with 10 years experience, including 6 to 8 years in disability matters); *Ridola*, 2018 WL 2287668 at \*16, Case No. 5:16-cv-02246-BLF, Dkt. No. 58-8, Declaration of Irene Karbelashvili ¶¶ 3, 6 (approving a rate of $325/hour for an attorney with 12 years of experience, including 6 years focused on disability access law).

The remaining three attorneys each seek fees at a rate of $410/hour: Mr. Valenti

---

[5] For Ms. Melton, Mr. Shaw did not indicate the extent of her experience in disability rights cases.

(approximately 10 years of practice), Ms. Gunderson (approximately 6 years of practice, with 2 years in disability rights cases) and Mr. Montgomery (approximately 8 years of practice).[6] Fees for work performed by Ms. Gunderson and Mr. Montgomery recently have been awarded at a $250 hourly rate. *See Gonzalez*, 2019 WL 3017647 at *4; *AutoZone, Inc.*, 2019 WL 2288111 at *7. Mr. Shaw has made no showing to the contrary. Nevertheless, in terms of years of experience, these attorneys seem comparable to attorneys who have been awarded fees falling within the $300-$350/hour range, except that Messrs. Valenti and Montgomery and Ms. Gunderson may have less experience in disability rights matters. Taking into account prior awards made to the Potter Handy/Center for Disability Access firm, as well as to other attorneys in this district, and absent other evidence from Mr. Shaw, the Court will award fees for these attorneys at $300/hour.

The present matter does not present novel or difficult issues requiring a high level of skill or specialization, and Mr. Shaw acknowledges that the present matter is a relatively simple one, involving straightforward application of the law. For the reasons discussed above, this Court is not persuaded that the rates awarded in *Rivendell* are appropriate here. Nor has Mr. Shaw demonstrated that rates approaching the exceptional rates awarded in *Diva Hospitality* are warranted. While Mr. Potter's declaration indicates that the attorneys in question have considerable experience, the Court also recognizes that "[t]he market rate for legal services . . . does not necessarily rise in direct relation to an attorney's skill and experience." *NJ Properties, Inc.*, 2019 WL 3718585 at *4.

This Court is mindful of the Ninth Circuit's observation that "[t]he district court's function is to award fees that reflect economic conditions in the district; it is not to 'hold the line' at a particular rate, or to resist a rate because it would be a 'big step.'" *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008). In view of the range of rates approved for attorneys practicing in this field, and in the absence of declarations from other attorneys of comparable skill, experience and reputation, and further recognizing that decisions pertaining to the same attorneys

---

[6] For attorneys Valenti and Montgomery, Mr. Shaw does not indicate the extent of their experience in disability rights cases.

9

in question are particularly salient, *United Steelworkers*, 896 F.2d at 407, this Court will award fees at the following rates: Mr. Potter ($475/hour), Mr. Ballister ($475), Ms. Grace ($475), Ms. Melton ($350), Mr. Price ($350), Ms. Masanque ($350), Ms. Carson ($350), Ms. Allen ($350), Ms. Seabock ($350), Mr. Seabock ($350), Mr. Mehton ($350), Mr. Valenti ($300), Ms. Gunderson ($300) and Mr. Montgomery ($300).

### B. Reasonable Hours

Mr. Shaw "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended[.]" *Hensley*, 461 U.S. at 437. Defendants have "a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1993). "The party opposing fees must specifically identify defects or deficiencies in the hours requested; conclusory and unsubstantiated objections are insufficient to warrant a reduction in fees." *Rivera v. Portfolio Recovery Associates, LLC*, No. 13-2322 MEJ, 2013 WL 5311525, at *4 (N.D. Cal. Sept. 23, 2013). However, "[e]ven if the opposing party has not objected to the time billed, the district court 'may not uncritically accept a fee request,' but is obligated to review the time billed and assess whether it is reasonable in light of the work performed and the context of the case." *Id.* (quoting *Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002)). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. A district court should also exclude from the lodestar fee calculation any hours that were not "reasonably expended," such as hours that are excessive, redundant, or otherwise unnecessary. *See id.* at 433-34; *see also Chalmers*, 796 F.2d at 1210 ("Those hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary.").

#### 1. Overstaffing

Defendants argue that there were too many attorneys involved in this matter and that the staffing of this case led to inefficiency and duplicative billing. Mr. Shaw says that some staffing

10

1  decisions were made due to health and turnover issues with some of the attorneys assigned to
2  work on this matter. However, other than arguing that Mr. Potter generally spent too much time
3  on this matter, defendants point to no particular instances of duplicative billing. Instead, for the
4  first time at the motion hearing, defendants complained that Mr. Potter, as one of the most senior
5  attorneys in the firm, should not have billed time for drafting the complaint—a task that
6  defendants contend should have been delegated to junior attorneys.

Courts in this district have recognized that routine work reasonably should be delegated to less senior attorneys, and that work by senior attorneys reasonably should be limited to matters requiring that level of skill. *See Hernandez v. Grullense*, No. 12-cv-03257-WHO, 2014 WL 1724356, at *8 (N.D. Cal. Apr. 30, 2014). Here, the Court notes that Mr. Potter billed 0.7 hours for drafting the original complaint, Dkt. No. 109-5 at 2. In view of the reduced hourly rate for which Mr. Potter's time is being compensated, and given defendants' meager showing, under the circumstances presented here the Court declines to make any further deductions related to Mr. Potter's drafting of the complaint. However, the Court will deduct time from the additional 0.7 hours that Mr. Potter billed for drafting the FAC. Dkt. No. 109-5 at 3. As noted above, the FAC is virtually identical to the original complaint, except that one additional defendant was added. *See* Dkt. Nos. 1 and 14. The Court sees no reason why preparation of the FAC should have taken another full 0.7 hours of Mr. Potter's time. Accordingly, the Court will deduct 0.4 hours and allow fees for 0.3 hours of Mr. Potter's time with respect to the FAC.

### 2. Clerical Tasks

Defendants object to a number of time entries in which attorneys billed time, primarily in 0.1-hour increments, to "instruct[] assistant[s]" to perform tasks, such as retrieve, file, or serve documents; send documents to the client or to opposing counsel; and to call or otherwise communicate with the client, opposing counsel, and others about scheduling matters. Purely clerical tasks generally are not recoverable in a motion for attorneys' fees and should instead be subsumed in normal overhead costs. *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) ("filing, transcript, and document organization time was clerical in nature and should have been subsumed in firm overhead rather than billed at paralegal rates"); *LaToya A. v. San Francisco*

11

*Unified Sch. Dist.*, No. 3:15-cv-04311 LB, 2016 WL 344558, at *9 (N.D. Cal. Jan. 28, 2016) (same); *Yates v. Vishal Corp.*, No. 11-cv-00643-JCS, 2014 WL 572528, at *5 (N.D. Cal. Feb. 4, 2014) (same). "When clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors." *Nadarajah*, 569 F.3d at 921.

The Court finds the delegated tasks in question are purely clerical in nature. Although Mr. Shaw's attorneys did not themselves perform those tasks, their "instruct[ions]" delegating those tasks to their support staff are no less clerical in nature. Accordingly, the Court deducts time from Mr. Shaw's fees request as follows[7]:

- Mr. Potter:       1.9 hours
- Mr. Ballister:    0.1 hour
- Ms. Grace:        0.3 hour
- Ms. Melton:       0.5 hour
- Mr. Price:        0.5 hour
- Ms. Masanque:     0.2 hour
- Ms. Carson:       0.3 hour
- Ms. Allen:        0.2 hour
- Ms. Seabock:      1.0 hour
- Mr. Mehton:       0.3 hour
- Ms. Gunderson:    0.1 hour
- Mr. Montgomery:   3.3 hours

### 3. Block Billing

Block billing is discouraged where discrete and unrelated tasks are grouped together because that practice can make it difficult, if not impossible, for the Court to assess the reasonableness of the time spent on each task. Here, defendants point to a single time entry by

---

[7] Because the Court has already deducted all of the time billed by Ms. Price, no additional deductions have been made here for time she billed for "instruct[ion] [to] assistant" to do various clerical tasks. As for the remaining timekeepers, in deducting time for clerical tasks, the Court only deducted 0.1 hour per time entry, even if the entry contained more than one "instruct[ion] [to] assistant." Conversely, the Court did not deduct time from any entry where the total time billed for more than one task was 0.1 hour, even if those tasks included an "instruct[ion] [to] assistant."

12

1 Ms. Seabock and contend that she "'block billed' the Notice of Motion and Motion for Summary
2 Judgment." Dkt. No. 111 at 5. Defendants presumably refer here to Ms. Seabock's October 31,
3 2018 time entry, in which she billed 8.0 hours for the following: "drafted Plaintiff's Notice of and
4 Motion for Summary Judgment, Plaintiff's Memorandum of Points and Authorities and related
5 exhibits; instructed assistant to file." Dkt. No. 109-5 at 14. As discussed above, the Court has
6 already deducted 0.1 from this entry for "instruct[ing] assistant to file" the summary judgment
7 motion. The remainder of the entry is not block billed, but simply describes the related summary
8 judgment papers Ms. Seabock says she prepared for filing. Accordingly, the Court will not further
9 deduct time from Ms. Seabock's October 31, 2018 entry based on defendants' contention that it is
10 block billed. *See, e.g., Cruz v. Starbucks Corp.*, No. C-10-01868 JCS, 2013 WL 2447862 at \*7
11 (N.D. Cal., June 5, 2013) (declining to reduce the requested fee award for alleged block billing
12 where the time records were adequate to allow the court to determine whether the time spent on
13 particular tasks was reasonable).

Nevertheless, the Court does take this time entry into account in the next section, below.

### 4. Alleged Barriers Not Properly At Issue

Defendants also argue that Ms. Seabock's October 31, 2018 time entry should be reduced because she "added causes of action that were not in the initial summons, therefore voiding those causes of action for being associated with attorney's fees." Dkt. No. 111 at 5. Although this argument is not the model of clarity, the Court understands defendants to mean that Mr. Shaw, as noted above, sought summary judgment on a number of alleged barriers that the Court ultimately concluded were not properly at issue in this litigation because they were not asserted in any pleading. At the motion hearing, Mr. Shaw's counsel contended that, at most, issues concerning those alleged barriers would have implicated only a few minutes in the preparation of the summary judgment motion. Defendants disagreed, noting that discovery, including defendants' depositions, had been conducted on these additional alleged barriers.

When a prevailing plaintiff achieves partial success, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436. "This will be true even where the plaintiff's claims were interrelated,

nonfrivolous, and raised in good faith." *Id*. In such cases, the Court has discretion to reduce the fee award. *Rodriguez*, 53 F. Supp. 3d at 1287. In adjusting fees to account for partial success, the Court follows a two-step inquiry:

> First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." If the plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or limited success" was obtained, full compensation may be excessive. Such decisions are within the district court's discretion.

*Id*. at 1288 (quoting *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir.1986)).

Under the first step of the analysis, Mr. Shaw's successful and unsuccessful claims regarding various access barriers are related because they were all based on the same statutory theories of liability. *See id*. ("[R]elated claims involve a common core of facts *or* are based on related legal theories.") (citation omitted).

Thus, under the second step of the analysis, the Court considers "whether the hours spent in litigation were reasonably necessary to obtain the relief that was ultimately obtained." *Id*. at 1289 (internal quotation and citation omitted). As noted above, Mr. Shaw prevailed on summary judgment with respect to several barriers in the parking lot, paths of travel, dining area and restroom. Dkt. No. 79. He was also awarded $4,000 in statutory damages under the Unruh Act based on those barriers, although the Court found no basis for his request for an additional $4,000 in general "ongoing deterrence" damages. *Id*. Mr. Shaw did not prevail with respect to other alleged barriers which no longer existed or apparently had already been remedied, or which had never been asserted in any of his complaints. *See, e.g.,* Dkt. No. 79 at 8-9. Nevertheless, "[a]ny violation of the ADA necessarily constitutes a violation of the Unruh Act." *M.J. Cable, Inc.*, 481 F.3d at 731 (citing Cal. Civ. Code § 51(f)). And, the Unruh Act allows for a minimum statutory damages award of $4,000 "for each occasion an individual is denied equal access to an establishment covered by the Unruh Act . . .." *Ridola v. Chao*, No. 16-cv-02246-BLF, 2018 WL 2287668, at *15 (N.D. Cal. May 18, 2018) (citing Cal. Civ. Code § 52(a)). Thus, having

14

established that he encountered at least some access barriers during his one visit to the Restaurant, Mr. Shaw would have obtained the same monetary relief, notwithstanding that he was not successful as to all of the barriers included in his summary judgment motion.

The focus of defendants' objection to the requested fees concerns billing efforts associated with those barriers that the Court ultimately found were not properly at issue. The billing statements submitted by Mr. Shaw are not detailed in a way that would allow the Court to identify and isolate the time his attorneys worked on those unsuccessful allegations. Nevertheless, the dispute over this portion of Mr. Shaw's requested fees may be narrowed to certain events which occurred relatively late in the litigation. The barriers in question were identified in Mr. Shaw's June 9, 2018 expert's report. Dkt. No. 59-9. Although the billing statement indicates that there was some subsequent discovery activity, it is not clear that all of those discovery efforts involved the additional alleged barriers in question. For example, Mr. Shaw's billing statement indicates that while attorney Mr. Montgomery drafted a second set of document requests on June 11, 2018, he did not review the expert's report until June 13, 2018. Dkt. No. 109-5 at 10. Defendants having presented no evidence to the contrary, the Court infers that those document requests did not involve the additional barriers in question. Similarly, the submitted billing statement indicates that Mr. Montgomery drafted and served Mr. Shaw's responses to defendants' discovery requests on July 9, 2018. *Id*. at 11. Because discovery responses ordinarily are due 30 days after they are served, the Court infers that the time spent preparing these discovery responses also did not involve the additional barriers in question.

There remain several post-June 9, 2018 time entries relating to defendants' depositions and Mr. Shaw's summary judgment motion. Defendants asserted at oral argument that the depositions covered the additional alleged barriers, but provided no support for that assertion in their opposition papers. Accordingly, the Court will not deduct any time spent in connection with depositions. However, as noted above, Mr. Shaw's summary judgment motion indisputably included the additional barriers in question. As to these events, the billing statement shows that

between October 31, 2018 and January 11, 2019, Ms. Seabock billed 9 hours[8] drafting Mr. Shaw's summary judgment motion and reply papers, and reviewing defendants' opposition papers. Dkt. No. 109-5 at 11, 14-15. Because Mr. Shaw could have achieved the same result in this litigation without pursuing these additional barriers, the Court concludes that the time spent was not reasonably necessary to obtain the relief that Mr. Shaw ultimately obtained.

However, the Court also considers the benefit Mr. Shaw obtained for other disabled individuals. *Rodriguez*, 53 F. Supp. 3d at 1290. The present lawsuit brought about remediation and injunctive relief that will benefit other Restaurant customers, and may also encourage other businesses to ensure that their public accommodations comply with federal and state disability access requirements. *Id*. Nevertheless, of the several barriers for which Mr. Shaw obtained relief, the parties ultimately agreed that defendants need only remediate one category, i.e., the threshold height for the Restaurant's entrances. Although a plaintiff need not obtain all of the relief he requested in order to achieve excellent results, the results here were not sufficiently "excellent" to warrant full payment for time spent on alleged barriers that Mr. Shaw did not properly put at issue. Accordingly, to account for Mr. Shaw's partial success, the Court will apply a 5% reduction to the 9 hours Ms. Seabock billed on summary judgment, leaving 8.55 hours that will be credited for payment. *See Rodriguez*, 53 F. Supp. 3d at 1290-91 (applying a 20% reduction to the overall lodestar to account for the plaintiff's partial success).

### 5. Additional Issues

#### a. Cut Off Entries

The text of several entries made by Mr. Montgomery between June 14, 2018 and June 25, 2018 appears to be have been cutoff, such that the last line(s) of each entry is partially visible, but not legible. The time entered for most of these entries is minimal (generally 0.1 or 0.2 hours), and the visible portion of these entries indicates that these entries primarily concerned Mr.

---

[8] The nine-hour total does not include the 0.1 hour that has already been deducted for time Ms. Seabock billed to instruct her assistant to file the summary judgment motion. Nor will the Court consider reducing time spent in connection with Mr. Shaw's administrative motion to strike defendants' summary judgment papers, which activity was prompted by defendants' late-filed brief.

16

1  Montgomery's "instruct[ions] [to] assistant," for which deductions have already been made, as
2  discussed above. Accordingly, the Court will not make any further reductions based on the
3  incomplete text of these entries.

### b.  Admission to Northern District of California

Although this issue was not raised by any party, as discussed at the motion hearing, all of Mr. Shaw's attorneys appear to be active members of the California State Bar, but several of them were not admitted to the bar of this Court when this litigation initially was filed. Neither side directed to the Court to any authority regarding the effect, if any, this should have on Mr. Shaw's fees request. However, in analogous situations involving out-of-state attorneys who are not admitted to practice *pro hac vice* in a particular district, the Ninth Circuit has held that such attorneys may recover fees for work as long as they (1) were eligible to be admitted *pro hac vice* as a matter of course, or (2) did not "appear" before the Court. *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 822-23 (9th Cir. 2009).

Applying *Winterrowd* analogously in the present matter, the Court concludes that the attorneys in question would meet the first prong of the *Winterrowd* test, as the Court has no information suggesting that these attorneys would not have been admitted to practice in this district during the time they worked on this case. *See, e.g., Loop AI Labs, Inc. v. Gatti*, No. 15-cv-00798-HSG, 2016 WL 2640472, at *2 (N.D. Cal. May 9, 2016) (permitting fees for work performed by out-of-state attorneys who satisfied the first prong of the *Winterrowd* test). To be eligible for admission and continuing membership to the bar of the Northern District of California, an attorney must be an active member in good standing of the State Bar of California. Civ. L.R. 11-1(b). As noted above, it is the Court's understanding that each of the attorneys in question were and are members in good standing of the California State Bar, and indeed they have now been admitted to the bar of this Court. Accordingly, the Court will not deduct any time billed by these attorneys during a period when they were not admitted here.

### c.  Reviewing Billing Statement

Mr. Shaw seeks $195 for time Mr. Potter spent reviewing the firm's bills and "remov[ing] items that could be taken as duplicative or unreasonable." Dkt. No. 109-5 at 18. Mr. Shaw has

cited no authority to support the recovery of such fees, and the Court does not find it reasonable to award fees for time Mr. Shaw's counsel spent identifying fees to which they apparently agree they are not entitled. Accordingly, the time spent for this task will be deducted from the fee award.

### 6. Lodestar Adjustments

Once the lodestar has been calculated, it may be adjusted upward or downward to account for any relevant factors set out in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) that were not subsumed in the initial calculation of the lodestar.[9] *Chalmers*, 796 F.2d at 1212. "The Supreme Court has noted, however, that the *Kerr* factors are largely subsumed within the initial calculation of reasonable hours expended at a reasonable hourly rate, rather than the subsequent determination of whether to adjust the fee upward or downward." *Id*. (citing *Hensley*, 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9.). Moreover, there is a strong presumption that the lodestar figure represents a reasonable fee; and, thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by specific evidence in the record, that the lodestar amount is unreasonably low or unreasonably high. *Van Gerwen v. Guarantee Mut. Life Co*., 214 F.3d 1041, 1045 (9th Cir. 2000) (citations omitted).

As noted above, this matter is a relatively simple one, involving straightforward application of the law, and Mr. Shaw does not request a multiplier. The Court finds no basis for any adjustments to the lodestar.

### C. Lodestar Amount

Multiplying the reasonable hourly rates and the hours reasonably expended, yields a

---

[9] The twelve *Kerr* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70.

18

lodestar amount of $37,955.00 as reflected in the following table:

| Attorney | Rate | Hours | Total |
| --- | --- | --- | --- |
| Mark Potter | $475 | 15.9 | $7,552.50 |
| Raymond Ballister | $475 | 1.0 | $475.00 |
| Phyl Grace | $475 | 3.2 | $1,520.00 |
| Mary Melton | $350 | 18.4 | $6,440.00 |
| Dennis Price | $350 | 10.5 | $3,675.00 |
| Isabel Masanque | $350 | 0.6 | $210.00 |
| Chris Carson | $350 | 4.3 | $1,505.00 |
| Teresa Allen | $350 | 2.1 | $735.00 |
| Amanda Seabock | $350 | 12.95 | $4,532.50 |
| Chris Seabock | $350 | 2.2 | $770.00 |
| Kushpreet Mehton | $350 | 10.4 | $3,640.00 |
| Matt Valenti | $300 | 0.6 | $180.00 |
| Sara Gunderson | $300 | 0.6 | $180.00 |
| Elliott Montgomery | $300 | 21.8 | $6,540.00 |
| | | **TOTAL** | **$37,955.00** |

### D. Costs

Defendants do not object to Mr. Shaw's request for the $400 filing fee and the $30 service fee, which are supported by the record. Dkt. Nos. 1, 7.

Nor do defendants state any objection to $2,651.50 in fees charged by Mr. Shaw's expert, Gary Waters, as indicated in Mr. Waters's invoice. Dkt. No. 109-7.

Mr. Shaw also seeks $1,036.25 in costs incurred for Michele and Randy Kelley's respective depositions. Dkt. No. 109-8. Defendants having asserted no objection, the Court awards payment of $1,036.25, as supported by the submitted invoice.

Defendants do object to $800 in fees paid to Mr. Shaw's investigator to conduct a pre-litigation inspection, as well as an inspection pursuant to this district's General Order No. 56. Mr.

Potter avers that although the investigator did not present a formal invoice, the requested $800 fee is his "going rate." Dkt. No. 109-4 ¶ 4. Defendants object to this fee due to the lack of a formal invoice, arguing that "[t]he IRS would not allow it, so neither should this Court." Dkt. No. 111 at 5. However, defendants have not provided this Court with any basis to conclude that Mr. Potter has been untruthful about the $800 he says was paid.

Accordingly, Mr. Shaw will be awarded costs in the amount of $4,917.75.

## III. CONCLUSION

Based on the foregoing, and upon the papers presented, Mr. Shaw's motion for attorneys' fees and costs is granted in part and denied in part as follows: Mr. Shaw is awarded $37,955.00 in fees and $4,917.75 in costs, for a total award of $42,872.75. The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: October 11, 2019

VIRGINIA K. DEMARCHI
United States Magistrate Judge